AO 472 (Rev. 11/16) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| STEVEN FAMILIA VALDEZ | ) | Case No.    19-10459-RWZ |
| | ) | |
| *Defendant* | ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☑ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or

☑ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

    ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

        ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

        ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

        ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

        ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

        ☐ **(e)** any felony that is not otherwise a crime of violence but involves: **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; *and*

    ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; *and*

    ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; *and*

    ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☑ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*:  There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

    ☑ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

    ☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

    ☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

    ☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

    ☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

    ☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

    **OR**

    ☑ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☐ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

    ☑ Weight of evidence against the defendant is strong
    ☑ Subject to lengthy period of incarceration if convicted
    ☐ Prior criminal history
    ☐ Participation in criminal activity while on probation, parole, or supervision
    ☐ History of violence or use of weapons
    ☐ History of alcohol or substance abuse
    ☑ Lack of stable employment
    ☐ Lack of stable residence
    ☐ Lack of financially responsible sureties

AO 472  (Rev. 11/16)  Order of Detention Pending Trial

    ❏ Lack of significant community or family ties to this district
    ❏ Significant family or other ties outside the United States
    ❏ Lack of legal status in the United States
    ❏ Subject to removal or deportation after serving any period of incarceration
    ❏ Prior failure to appear in court as ordered
    ❏ Prior attempt(s) to evade law enforcement
    ❏ Use of alias(es) or false documents
    ❏ Background information unknown or unverified
    ❏ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

SEE ATTACHED SHEET

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:        12/26/2019                             /s/ Judith Gail Dein

                                                   United States Magistrate Judge

Steven Familia Valdez
19-10459-RWZ

The defendant Steven Familia Valdez is charged in an indictment with conspiracy to conduct enterprise affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). The indictment is the result of a multi-year investigation involving confidential witnesses who were long-standing, active members of the Latin Kings gang, wiretaps, surveillance, audio-visual recordings and other investigative methods. The government has moved for detention pursuant to 18 U.S.C. §§ 3142 (f)(1)(C), (f)(2)(A) and (f)(2)(B) on the grounds that the defendant poses a danger to the community and is a serious risk of flight, and that there is a serious risk that the defendant will obstruct or attempt to obstruct justice. A detention hearing was held on December 17, 2019, at which the defendant was represented by counsel. The government presented the testimony of Special Agent Craig Ryan Harvey of the FBI, who was cross-examined by defense counsel. The defendant did not introduce the testimony of any witnesses. After consideration of all of the evidence and arguments of counsel, this court finds that the government has met its burden of proving by clear and convincing evidence that no conditions of release can be set that would reasonably ensure the safety of the community. Therefore, the defendant is ordered detained. This court does not reach the other grounds for detention argued by the government.[1]

---

[1] This court notes that there were representations made by the government that, after the arrests in this case, serious threats had been made to individuals who Latin King members believe to be cooperating in the investigation. However, the government is not in a position yet to identify who participated in such threats.

[1]

The evidence before this court is that the defendant is a former member of the Devon

Street Kings (a/k/a "D5K") chapter of the Latin Kings located in Boston, Massachusetts. As

described by the government:

> The LATIN KINGS is one of the largest criminal organizations in the world,
> with thousands of members across the United States. The LATIN KINGS were
> formed in Chicago, which continues to serve as the nerve center for regional
> and local chapters that operate in cities and local communities across the
> United States. The LATIN KINGS' greatest strength is the organization itself:
> the gang's strict hierarchy, adherence to a national manifesto, internal
> judicial methods, and sophisticated system of communications make the
> gang a formidable threat. The LATIN KINGS leverage this vast,
> interdependent criminal network to raise revenue through criminal and non-
> criminal enterprises. The gang's operations are protected by violence, both
> internal (towards uncooperative or untrustworthy members) and external
> (towards rival gangs, witnesses, informants, and law enforcement). The
> LATIN KINGS are an established, organized, and well-funded organization.

Affidavit of Special Agent Dominic Coppo (Ex. 1) (hereinafter "Aff.") ¶ 7. Among the sources of

revenue for the Latin Kings is drug trafficking in various types of drugs. Id. at ¶ 14. The

defendant was a member of the Latin Kings until this past summer when he was

excommunicated for engaging in a physical altercation with another member without

authorization.

The evidence before this court is that the defendant Steven Familia Valdez, also known

as "King Haze," was a trusted member of the D5K chapter of the Latin Kings. Id. ¶ 54. He has

been identified through various pictures, social media posts, and references by other members.

Id. He is featured on a number of YouTube videos with other members of D5K holding money

and firearms, showing the gang hand sign, and rapping about shootings. Id.

The defendant has been identified as being present at meetings of the leadership of the

Latin Kings, establishing that he was a trusted member of the gang, and was involved in drug

[2]

trafficking that was approved by the gang. For example, without limitation, the defendant was present at a meeting on March 23, 2018 which was recorded by a CW. In the recording, the defendant states that he accidently sold 100 grams of fentanyl to a customer (provided to him by another gang member) thinking it was cocaine base. Id. ¶ 55. The customer ended up in the hospital. The defendant missed a meeting on March 30, 2018, at which the fact that the defendant was out selling drugs was discussed. There was testimony that the defendant was excused from the meeting, over some objection, due to his trusted position with Angel Roldan, who was then the Cacique for Massachusetts for the Latin Kings. At a later meeting on January 23, 2019, the defendant claimed that Roldan owed him $20,000 for 7 pounds of marijuana. Id.

During the meeting of March 23, 2018, which the defendant attended, Wilson Peguero, the Inca of D5K, confirmed that a gang member was to be punished for not reporting, and for starting a "renegade chapter." Id. ¶¶ 251-52. This was the topic of discussion of various meetings over the following year, including one on January 12, 2019 at which the defendant was present. Id. ¶¶ 254-55. During this meeting, the members of D5K were informed that they could commit violence against the offender on their own, and did not have to wait for specific instructions. Id. ¶ 255. There was testimony that after this meeting, the defendant drove several other gang members around looking for the individual who had been targeted for punishment. Those driving around had a firearm with them. The "renegade" member was shot and seriously injured on July 4, 2019. Id. ¶ 256. While two individuals have been charged with the shooting, it is not known if they were affiliated with the Latin Kings. Id. ¶ 256. There is evidence that Roldan had previously stated that he had individuals "on deck" who could commit violence for D5K but would not be linked to the Latin Kings. Id. ¶ 257.

[3]

The defendant was also present at a meeting on October 14, 2018 at which the leadership and members of D5K were discussing the killing of a probationary member's mother by a rival gang, the Lucerne Street gang. Id. ¶ 212. During that meeting, Roldan called in and stated that there were going to be "hits" against the Lucerne Street gang members, including those in DOC custody. Id. The defendant is captured on a recording of this meeting discussing the score of how many people each side had shot.

The defendant, age 26, was born and raised in Boston, Massachusetts, although he lived for approximately one year in Philadelphia. He dropped out of school in tenth grade, and earned his GED in Pennsylvania in 2015/16. He has family in the Dominican Republic, but his mother and his two sisters live in Mattapan, and his father and his family (including two young children) reside in Rhode Island. Prior to his arrest, the defendant was living with his mother, his two sisters, and other relatives in Mattapan. The defendant has been in a significant relationship for 4 years, and the couple have one son, born in July 2018. His son lives with his mother in Dorchester.

The defendant was unemployed at the time of his arrest. He has worked sporadically for his uncle doing snow removal, and has earned some money fixing cars and cell phones. Approximately three years ago the defendant lived with his father for 5-6 months in Rhode Island. His father is a manager at a cleaning business, and he employed the defendant until a specific job ended. While his father wanted the defendant to apply for another job in the company, the defendant did not want to wait and returned to Massachusetts. The defendant's father is very interested in having the defendant come live with him in Rhode Island, and work

[4]

for his company.  His father had been trying to convince the defendant to come live with him in Rhode Island even before his arrest.

The defendant has a limited criminal record.  Charges of disturbing the peace were dismissed in 2011, a charge of trespassing was dismissed in 2013 after the defendant completed community service, and a charge of possession with intent to distribute a Class A controlled substance was nolle prossed in 2015.  A compulsory insurance violation was dismissed in 2015.  In 2017 and 2019 charges of possession with intent to distribute a Class D controlled substance were dismissed after payment of court costs.  The defendant was also charged in Pennsylvania with drug offenses in 2017, which were nolle prossed, and he pleaded guilty to a DUI of alcohol or controlled substance, and was fined.

Although limited, the defendant's involvement with the criminal justice system spanned virtually his entire adult life, both in Massachusetts and in Pennsylvania.  Despite this history, the defendant has chosen to be a member in a violent gang, and the evidence of his involvement in drug trafficking is strong.  Although given the opportunity to live with his father in Rhode Island, he elected to return to Massachusetts and to continue his participation in the gang until being excommunicated, apparently due to a violent altercation with another gang member.  While this court appreciates the defendant's father's willingness to have his son live with him in Rhode Island, the record before this court provides no evidence that his father is able to exert sufficient control over the defendant to ensure compliance with conditions of release.  The risks to the community, including, without limitation, the father's two young children, is too high.

[5]

The government has met its burden of proving by clear and convincing evidence that the defendant poses a serious danger to the community.  This court cannot fashion conditions of release that would reasonably ensure the safety of the community.  The defendant is ordered detained.