UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| | ) | |
| v. | ) | Crim. No. 19-10459-RWZ |
| | ) | |
| | ) | |
| STEVEN FAMILIA VALDEZ | ) | |

DEFENDANT'S MOTION FOR REVOCATION
OF MAGISTRATE'S ORDER OF DETENTION

The defendant Steven Valdez hereby moves this Court to revoke Magistrate Judge Dein's order detaining him pending trial in the above-captioned case; see Document 274, dated December 26, 2019. The defendant asks this Court to impose conditions for his release to be observed during the pendency of this case. He makes this motion pursuant to 18 U.S.C. §3145(b).

In granting the government's motion for detention, the Magistrate Judge determined that a rebuttable presumption in favor of detention arose because there was probable cause that Valdez committed "an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or Chapter 705 of Title 46. U.S.C." In this case, Valdez is charged with racketeering conspiracy in violation of 18 U.S.C. §1962(d). The judge further found that while the defendant had

-1-

presented sufficient evidence to rebut the presumption, "after considering the presumption and the other factors discussed [in the detention order], detention is warranted." Judge Dein specifically determined that "no condition or combination of conditions could reasonably assure the safety of any other person and the community."

The Magistrate Judge found that Valdez was a trusted member of the D5K chapter of the Latin Kings (hereinafter "ALKQN"), and that he was present at gang meetings; her order specified his presence at two meetings in March 2018 and January 2019. Other evidence set out in the complaint affidavit that was admitted in evidence against all defendants in this case alleged that Valdez was involved in the sale of marijuana and fentanyl. Evidence at the hearing also showed that Valdez was not a member of the gang after the summer of 2019. Testimony on December 17 showed that Valdez had a fight with another member named Oscar Pena, a/k/a "O-Block." 12/17/19 Tr., pp.33-35. Testimony at Robert Lara's hearing from the same government witness revealed that the origin of the trouble between Valdez and Pena was personal, having nothing to do with gang business. Valdez learned that Pena was having sex with Valdez's sister and was upset about this. He hit Pena, and was ordered to receive a beating for hitting Pena. Valdez protested that Pena's behavior was out of line and that he

should not be punished for fighting with Pena over a family matter.  Valdez's refusal to accept a physical beating by other gang members as punishment was an additional violation of the gang's rules. 12/23/19 Tr., pp.20-22.  Valdez's refusal to follow gang orders resulted in his expulsion from the D5K gang.

The order of detention should be revoked for the following reasons.

I.        This Is Not A Presumption Case

The Magistrate Judge ordered detention based in part on the application of 18 U.S.C. § 3142(e)(3)(A)'s rebuttable presumption in favor of detention.  Doc. 274, pg.2.  However, this presumption does not apply because Mr. Valdez is not charged with any of the drug offenses listed as predicate charges (hereinafter collectively referred to as "the Controlled Substances Act.") Nor has there been a probable cause hearing that addressed whether there was probable cause to believe that Valdez had violated any provisions of the Controlled Substances Act.

The text of § 3142(e)(3)(A) is specific. The rebuttable presumption applies when "there is probable cause to believe that the defendant committed on or more of <u>the following offenses</u>: (A) <u>an offense</u> for which the maximum term of imprisonment of ten years or more is prescribed in the <u>Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export</u>

Act (21 USC 951 et seq.), or chapter 705 of Title 46[.](Emphasis added). Valdez has been charged with participating in a racketeering conspiracy in violation of 18 U.S.C. § 1961.

The indictment in this case does not serve as a finding of probable cause to believe that Valdez committed a violation of the Controlled Substances Act. He was indicted before his initial appearance in this case; there has only been a detention hearing under §3142(f), and not a preliminary hearing under Rule 5.1 of the Federal Rules of Criminal Procedure. The elements of a RICO conspiracy are very dissimilar from the elements of either a substantive violation of the Controlled Substances Act or a conspiracy to violate the Act. The elements necessary to charge a defendant with racketeering conspiracy are a) the existence of an enterprise, b) that is engaged in specified racketeering activity affecting interstate commerce, c) the defendant's employment by or association with the enterprise, d) the defendant's agreement to conduct or participate in the conduct of the enterprise, and e) the existence of a pattern of racketeering activity as defined by 18 U.S.C. §1961. See, e.g., United States v. Westley, 2019 U.S. Dist. LEXIS 102369 (D.Conn.) at *4. The elements of both substantive and conspiracy offenses under the Controlled Substances Act are obviously different from those set out above.

Not only is the text of 18 U.S.C. §3142(e)(3) specific. It is unambiguous. Violations of 18 U.S.C. §1962 are not within the scope of §3142(e)(3)(A)'s presumption in favor of detention. The rules of statutory construction should end any further discussion of the matter.

> When interpreting a statute, the court "must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." "If the meaning of the text is plain – in other words, if it bears only one reasonable interpretation – that meaning controls."

United States v. Suastegui, 2018 U.S. Dist. LEXIS 130701 (W.D. Va.) at *8, quoting Laber v. Harvey, 438 F.3d 404, 418-419 (4th Cir. 2006), and Raplee v. United States, 842 F.3d 328 , 332 (4th Cir. 2016). Had Congress intended the rebuttable presumption to apply in racketeering cases under §1962(d), it could have easily provided for that in drafting §3142(e). Even more telling, the government never asserted at Mr. Valdez's detention hearing that the presumption applied.

Finally, if one uses the categorical approach to confirm if a §1962(d) conspiracy qualifies as a violation of the Controlled Substances Act for the purpose of applying the §3142(e)(3)(A) presumption, one must conclude that a racketeering conspiracy fails the test. Under the categorical approach, a court examines "how the legislature has defined the crime, without a concomitant

inquiry into the details of the defendant's actual criminal conduct." <u>United States v. Winter</u>, 22 F.3d 15, 18 (1st Cir. 1994).  In <u>Winter</u>, the court had to determine whether a conviction for racketeering conspiracy met the definition of a "crime of violence" for purposes of applying the sentencing guidelines.  It noted that "[t]he label "racketeering," though pejorative, does not shed much light on whether the activity in question poses (or fails to pose) a serious potential risk of violence."  By the same token, "racketeering," taken as a categorical term, sheds no light on whether this matter is "an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§801-904)."  The Magistrate Judge committed legal error in applying and considering §3142(e)(3)(A)'s presumption to justify Valdez's pretrial detention.

II.        The Evidence Against The Defendant And The
           Magistrate Judge's Findings Do Not Support
           The Conclusion That No Conditions Of Release
           <u>Will Assure The Safety Of The Community</u>

The evidence adduced at Valdez's detention hearing and Magistrate Judge Dein's factual findings do not support the conclusion that "th[e] court cannot fashion conditions of release that would reasonably ensure the safety of the community." Doc.

274 at pg.9.[1]  The government's primary assertion regarding the dangerousness of any and all of the defendants in this case is that because they are members of the ALKQN, they will, post-indictment, mindlessly follow all orders to inflict violence against government informants and intimidate witnesses against them, in violation of any possible release conditions.[2]  Specifically regarding the possibility of witness intimidation, government counsel asserted,

> I would submit that the green lights have been put on these witnesses at various times.  It's detailed in the affidavit, and as such, <u>the members of the gang</u> and that was the enterprise, <u>poses significant threat of danger, of physical harm to the witnesses in the case. That's simply a fundamental part of who the Latin Kings are.  It's one of their fundamental principles of their rules and regulations of their manifesto.</u>

12/17/19 Tr., pg.48 (Emphasis added).  That argument as applied to Mr. Valdez is an argument in <u>favor</u> of release on conditions, as the evidence at the hearing made clear that as of the summer of 2019, Valdez had been expelled from the ALKQN and that a green

---

[1] Transcripts of Valdez's detention hearing on December 17, 2019, and the hearing of co-defendant Robert Lara are attached as exhibits to this motion.

[2] After the evidence on December 17, government counsel's opening declaration in asking for detention was, "[t]he government has moved for detention under, as you know, three grounds; that is, that the defendant poses an intolerable risk of danger to the community, intolerable risk of flight, and also a potential for witness obstruction and intimidation."  12/17/19 Tr., pg.45

light had been put out on him in July 2019.[3]  Valdez would have no logical reason to assist the ALKQN in whatever endeavors they might pursue in order to eliminate or intimidate any government witness.

Valdez's actions detailed in Judge Dein's detention order consist of his participation in gang meetings, drug dealing activity, and driving a car with other gang members as passengers who were allegedly searching for an associate of a renegade ALKQN member.[4]  Though the government's witness testified that Valdez was heard to speak during a telephone call while this ride was taking place, the witness could not recall what Valdez purportedly said. 12/17/19 Tr., pp.20-21, 41-42.  There was no evidence presented to Judge Dein that Valdez had engaged in any violence against anyone in response to a gang directive. Moreover, evidence that was not presented on December 17, and was also not made available to undersigned counsel at that time, but was subsequently presented in connection with the detention hearing of Robert Lara on December 23, 2019, showed that another ALKQN member, Adam Peguero, was ordered to administer a beating to Valdez on March 17, 2019, and did so.

---

[3]  12/17/19 Tr., pp.31-32, 36.

[4]  Incident taking place on January 12, 2019.

Defendants accused of violent conduct are often released on conditions pending trial in this Court. Similarly, defendants alleged to be engaged in drug trafficking offenses, even those carrying mandatory minimum prison terms, are also eligible for release on conditions. The egregious acts of violence alleged in the government's arrest affidavit, e.g., shootings, beatings, do not involve Mr. Valdez personally except as a victim. The detention order attempts to cast Valdez's extremely minor criminal record as having "spanned virtually his entire adult life." That criminal history consists of a trespassing in 2013, a heroin possession charge that was nolle prossed in 2015, a car insurance violation that was dismissed in 2015, and dismissed marijuana charges in 2017 and 2019. This criminal history cannot support the conclusion that Valdez presents such a risk of future dangerousness that no conditions of release exist that would protect the safety of the community.

At bottom, the detention order appears based on the Magistrate Judge's disapproval of Valdez's decision not to stay with his father in Rhode Island and seek employment there, and his choice instead to return to the Boston area to live with his family here and become involved with the D5K gang.[5] But Valdez's

---

[5] Valdez proffered at the hearing that he had long-standing ties to Boston; his mother, his girlfriend, and their child all live in Boston. 12/17/19 Tr., p.55.

exercise of that choice in no way supports the judge's conclusion that his "father is [not] able to exert sufficient control over the defendant to ensure compliance with conditions of release." There was no evidence whatsoever that Valdez ever flouted his father's authority, disobeyed the rules of his father's household, or exerted a negative influence on his younger siblings.  The Magistrate Judge's implication that these things had occurred was without any factual support in the record.  The evidence showed that Valdez has the support of his father, that his father has a suitably outfitted residence, and that his father is able to secure employment for his son, which would be to everyone's benefit, including this Court's.

The defendant requests a hearing on this motion for reconsideration and asks the Court to reverse the Magistrate Judge's ruling, revoke the order of detention, and impose conditions of release.

                                     Respectfully submitted

                                     By his attorney,


                                     <u>/s/ Syrie D. Fried</u>
                                     Syrie D. Fried
                                     Good Schneider Cormier & Fried
                                     83 Atlantic Avenue
                                     Boston, MA 02110
                                     (617) 523-5933

CERTIFICATE OF SERVICE

I, Syrie D. Fried, do hereby certify that this document has been filed electronically via this Court's electronic case filing system ("ECF"), and will be served electronically upon the parties identified in the Notice of Electronic Filing ("NEF") this 9th day of March, 2020.

/s/ Syrie D. Fried