UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.               ) | CRIM. NO.  19-10459-RWZ |
| ) | |
| STEVEN FAMILIA VALDEZ ) | |

MEMORANDUM IN AID OF SENTENCING AND
MOTION FOR DOWNWARD DEPARTURE AND VARIANCE

The defendant Steven Familia Valdez, through undersigned counsel, respectfully submits this memorandum to assist the Court at sentencing in the above-captioned case.  The sentencing hearing is set for November 9, 2021 and follow's Mr. Valdez's guilty plea to a count of conspiracy to engage in racketeering activity in connection with his membership in a local chapter of the Latin Kings.  Counsel requests this Court to sentence Mr. Valdez to the time he served before being released, which was four months.  Mr. Valdez was a minor participant in the Latin Kings and was not even a member of the group when he was charged.  He has rehabilitated himself since being released on conditions and is well on the way to making a constructive life for himself and his young family.

Steven Valdez has lived almost all of his life in Boston; he grew up in Dorchester.[1]  His connection to a particular Latin Kings chapter, called D5K, evolved out of his long-standing acquaintances and friendships with other youths in his neighborhood dating back to his childhood, a number of whom ended up affiliated with the gang.  Counsel does not believe that

---

[1] Since being released on this arrest, Mr. Valdez has stayed with his father in Rhode Island and with family friends in Lynn.

there was a conscious desire on Mr. Valdez's part to belong to the Latin Kings; instead it was more a matter of the gang's developing around a circle of acquaintances and friends. Mr. Valdez's involvement in the group consisted largely of attending meetings and selling street-level amounts of marijuana.

Members of this group did not have real freedom and autonomy. They were always under a threat of being physically harmed for running afoul of an edict from someone higher up in the group or committing some perceived infraction of the gang's rules. A member could not simply quit the group. The only way to leave the group was to get thrown out. Mr. Valdez was excommunicated from D5K and took a beating in March 2019 for having a personal dispute with another member who was involved with his sister. Thus, Mr. Valdez managed to escape from the group before his arrest, although at a real personal cost.

I. MR. VALDEZ'S CRIMINAL HISTORY SCORE OVERSTATES THE SERIOUSNESS OF HIS RECORD.

The presentence report scores Mr. Valdez's only conviction, for driving under the influence of marijuana in 2017, for two points, placing him in CHC II. See PSR ¶71. Category II overstates the seriousness of this driving offense. He was placed on probation that was later revoked for failing to pay a fee. On revocation, he was given an indeterminate sentence which in reality was only a few days' incarceration. But that sentence structure qualified it under the sentencing guidelines as an offense scorable for two criminal history points, the same as if he had been sentenced to a year in jail. In this circumstance, CHC of II overstates Mr. Valdez's criminal record. Counsel requests a downward departure from his criminal history category to CHC I.

## II.    MR. VALDEZ SHOULD BE AWARDED A MITIGATING ROLE REDUCTION TO HIS OFFENSE LEVEL.

Compared to the responsibilities carried out by most other defendants in this conspiracy, Mr. Valdez's level of participation in forwarding the goals of the Latin Kings was minor to minimal, and his adjusted offense level should reflect that reality.  Mr. Valdez's role in the activities of the Latin Kings was very minor.  Paragraphs 45 through 51 of the presentence report sketch his attendance at a handful of meetings in 2018 and 2019.  Like all of the other members of the group, he went to meetings and paid dues.  But he was not religious in his attendance at meetings and often skipped them.  He rarely said anything at meetings, staying in the background.   He had no official status in the D5K chapter; see PSR ¶32, which identifies officers of the D5K chapter.  He was not an obedient soldier of the gang.  He was physically disciplined under protest in March 2019 for violating a gang rule, see PSR ¶51, and was "terminated" from the group in the summer of 2019.  That status put him at risk of being beaten up if he encountered or interacted with any active member of the group.

The PSR at ¶53 states that Mr. Valdez was present as the driver of a car in which another defendant was riding on June 8, 2018; that defendant, Angel Roldan, consummated a drug deal with a government informant.  However, the PSR also states that Valdez did not participate in the drug transaction and did not know that a fentanyl deal was taking place.  Mr. Valdez disputes the allegation in ¶54 of the PSR and states that he was not present during this incident. Information received in discovery about the July 26, 2018 gun sale by Roldan does not show in any conclusive way that Valdez was present at or played a role in this deal.[2]

---

[2]  A three-page report of this incident describes the person riding in the car with Angel Roldan as "an UNKNOWN PERSON (believed to be Steven Valdez)."  Counsel suggests that

Mr. Valdez should be granted a role reduction under USSG §3B1.2 of at least three levels.  See, e.g., United States v. Adams, 286 F.Supp. 2d 1017 (E.D. Wisc. 2003)(defendant who acted as look-out for bank robbery and who was present at sessions where robbery was planned but who did not actively participate in planning and took assigned role granted 3-level mitigating role reduction). Similarly situated codefendants in this case have been granted 3- and 4-level minimal role adjustments; see, e.g., Sandra Correa (defendant #11), who pleaded guilty to RICO conspiracy and stipulated to conspiring to commit violent assaults; plea agreement stipulates to 2-level role reduction; Kevin Guadeloupe (defendant # 33), who stipulated to involvement in a robbery and was granted 4-level minimal role reduction in his plea agreement; sentenced to time served of approximately two weeks. There are others whose plea agreements stipulate to mitigating role adjustments who have not yet been sentenced.  See, e,g., Robert Lara (defendant #19), who pleaded guilty to RICO conspiracy; plea agreement stipulates to 4-level role reduction.  Like Mr. Valdez, all of the defendants listed above were or have been on release before being sentenced, and his level of participation in Latin Kings activities was no greater than theirs.

---

this is very unlikely to be accurate.  The car used in this transaction was not Valdez's car.  Moreover, the informant who participated in this transaction, code-named CW-3, was well acquainted with Valdez and would not have described him as an "unknown person."  In fact, CW-3 had identified Valdez a month earlier as being in Roldan's company during the drug transaction described in ¶53.

III.    FACTORS ENUMERATED IN 18 U.S.C. §3553(a) WARRANT A DOWNWARD VARIANCE FROM THE ADVISORY GUIDELINE RANGE IN THIS CASE TO TIME SERVED.

18 U.S.C. §3553(a) dictates that a sentence shall be "sufficient but not greater than necessary [] to comply with the purposes set forth" in paragraph 2 of the statute. An appropriate sentence reflects the seriousness of the offense, provides just punishment for the offense, promotes respect for the law, adequately deters criminal conduct, protects the public from the defendant's further crimes, strives to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment, avoids unwarranted disparity between similarly situated defendants, and accounts for the need to make restitution to any victim. 18 U.S.C. §3553(a)(2),(6), and (7). In Gall v. United States, 552 U.S. 38, 128 Ct. 586 (2007), the Supreme Court reiterated that

> after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party. . . . He must make an individualized assessment based on the facts presented. . . . After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

128 S.Ct. at 598-597 (internal citations omitted). Gall makes clear that a sentencing judge may take mitigating factors into account in fashioning a sentence, whether or not those factors have been previously identified by the Sentencing Commission as relevant to the formulation of a sentence, without abusing his or her discretion. In the end, the goal is to achieve an appropriate and reasonable sentence.

A.     MR. VALDEZ HAS DISPLAYED COMMENDABLE POST-OFFENSE REHABILITATION WARRANTING A DOWNWARD VARIANCE.

Since committing the offense here, Mr. Valdez has made very good progress in rehabilitating himself and preparing to take his place in the community as a responsible adult. Immediately upon release he worked with his father at the cleaning business in Rhode Island that he manages. When his father's household began to feel too crowded, Mr. Valdez returned to Massachusetts and took up residence in Lynn with the family of Joan Santigo, a longtime friend. He contributes to her household and earns money repairing cars and fixing cell phones. He works part-time as a security guard at the TD Garden, a job he enjoys. He is also enrolled in a truck-driving school in order to obtain his CDL license. He has been in that program since August 2021 and will complete it in December of this year, should this Court allow him to remain in the community. See Letter from NETTTS confirming Mr. Valdez's enrollment in the CDL program, along with his transcript. Mr. Valdez does not have a history of serious drug or alcohol abuse, although he has used marijuana.[3] See PSR ¶99. The fact that he does not have substance abuse obstacles to overcome makes it much more likely that he will not commit any further crimes and will not encounter problems complying with this Court's requirements while on supervision. His pretrial supervision has gone well, according to the presentence report.

Mr. Valdez is valued by his family and has befriended and helped people in his community. Patricia Riordan, a teacher in the Boston Public Schools writes that she and Mr. Valdez became friends in 2015 after the death of one of her students. This tragedy also brought

---

[3] He had a medical marijuana card, but he has not used since his arrest. His medical problems include back pain from an auto accident three years ago and light sensitivity in his vision.

Steven in contact with the youth's mother, Melissa Guerrero. Ms. Riordan writes that Steven became like a member of the Guerrero family, helping out whenever Ms. Guerrero needed anything and looking after her daughters. Ms. Guerrero writes that he became a second son to her. She describes him as sweet and humble. Donieshia Baker writes that she has known Mr. Valdez since his mother and sister became her tenants, also in 2015. She says he is a good father to his 3 year-old son Amir and is always helping people with their cars; she describes him as kind and helpful. Undersigned counsel has found Mr. Valdez to be pleasant, forthcoming, and polite. It is easy to understand why people are comfortable around him.

It is consistent with the mandates of §3553(a) to consider Mr. Valdez's post-offense rehabilitation in determining his sentence.[4] See United States v. Hubel, 625 F.Supp.2d 845, 852-854 (D.Neb. 2008). Given Mr. Valdez's very positive adjustment to life in the community since his release in April 2020, imposing a custodial sentence at this time would not advance the goals of sentencing and would instead be very counterproductive. It would deprive his family of important financial and emotional support and would not contribute to the safety of the community at large. Mr. Valdez has experienced significant punishment as a result of his pretrial detention, and that period of detention will be a very strong deterrent to any future criminal activity on his part. Counsel respectfully asks this Court not to derail the progress Mr. Valdez has made and to sentence him to time served and twenty-four months of supervised release. Such a sentence would be in alignment with the sentences imposed on similarly situated codefendants in this case. In addition to the defendants discussed supra at pg. 4, see Isaac Felix-Rivera (defendant #32), who pleaded to RICO conspiracy and was sentenced to time served

---

[4] Indeed, the facts in Gall largely involved post-offense rehabilitation.

followed by six months home confinement; served approximately four and one-half months before his pretrial release; adjusted offense level calculated at 23 in plea agreement, at least seven levels higher than Valdez's.

## CONCLUSION

For the reasons set forth above, and for any others that may become apparent to this Court at the sentencing hearing, counsel for the defendant Steven Familia Valdez requests that this Court sentence him to incarceration of time served followed by twenty-four months of supervised release. Counsel asks that no fine be imposed, as Mr. Valdez is indigent.

Respectfully submitted,

By His Attorney

/s/ Syrie D. Fried
Syrie D. Fried
  BBO# 555815
Good Schneider Cormier & Fried
83 Atlantic Avenue
Boston, MA 02110
(617) 523-5933
sf@gscfboston.com

## CERTIFICATE OF SERVICE

I, Syrie D. Fried, do hereby certify that the above memorandum has been filed electronically via this Court's electronic case filing system ("ECF"), and will be served electronically upon the parties identified in the Notice of Electronic Filing this 6th day of November, 2021.

/s/ Syrie D. Fried
Syrie D. Fried